**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

1.  MICHAEL SHOWALTER

    Plaintiffs,

    v.

1.  HOMESITE INDEMNITY
    COMPANY, a foreign for profit
    insurance corporation, and
2.  AMFAM, INC., d/b/a AMERICAN
    FAMILY INSURANCE CLAIMS
    SERVICES,

    Defendants.

Case No. 25-cv-00730-J

---

**DEFENDANT HOMESITE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

---

GOOLSBY, PROCTOR, NELSON & LEE

Robert Todd Goolsby, OBA #12676
Madison A. Botizan, OBA #34615
Valerie R. Smith, OBA #30259
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102-6006
T: 405-524-2400 | F: 405-525-6004
tgoolsby@gpnllaw.com
mbotizan@gpnllaw.com
vsmith@gpnllaw.com

***Counsel for Defendants, Homesite Indemnity Company & AmFam, Inc. d/b/a
American Family Insurance Claims Services***

June 1, 2026

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

UNDISPUTED MATERIAL FACTS ..................................................................... 2

    The Policy ........................................................................................................... 2

    The Claim and The Property ............................................................................. 5

ARGUMENT AND AUTHORITY ....................................................................... 10

    I.    The Summary Judgment Standard ................................................... 10

    II.   HIC provided all benefits owed to Plaintiff for this loss, thus it did not breach the Policy…………………………...……………………………………………11

        a.  HIC did not breach the contract as to the benefits provided under the Dwelling coverage because HIC paid all benefits owed to Plaintiff……………………...12

        b.  The Extended RCV Endorsement does not apply because Plaintiff failed to put HIC on notice of any improvements or alterations to the Dwelling………….13

        c.  Plaintiff is not entitled to indemnity for subsequent water damage due to the Policy's exclusions for neglect and weather………………………….………14

        d.  Plaintiff does not dispute the Replacement Cost Value attributable to his lost personal property; Thus, HIC did not breach the Policy by failing to pay additional amounts for Personal Property……………………….………….16

        e.  HIC did not breach the Policy by failing to pay Additional Living Expense benefits because Plaintiff did not provide evidence of incurred increased living expenses, nor does this coverage provide for Plaintiff's medical expenses……17

    III.  A legitimate dispute exists as t Plaintiff's claim, extinguishing his bad faith cause of action…………….…………………………………………………………….18

        a.  Oklahoma bad faith law generally…………………………………………..19

        b.  A legitimate dispute exists as to the value of the loss and the scope of repairs necessary……………………………………………………………………20

    IV.  Plaintiff's claim for punitive damages fails because HIC did not commit bad faith…………………………………………………………………………………21

CONCLUSION…………………………………………………………………………22

**TABLE OF AUTHORITIES**

**Cases**

*Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670-71 (10th Cir. 1998)…………………11

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)………………………………10, 11

*Bowers v. CSAA Gen. Ins. Co*., No. CIV-23-419-J, 2024 WL 1699560, at *5–6 (W.D. Okla. Apr. 8, 2024), *reconsideration denied*, No. CIV-23-419-J, 2024 WL 4004997 (W.D. Okla. July 11, 2024)……………………………………………………………………………...20

*Cates v. Integris Health, Inc*., 412 P.3d 98, 103 (Okla. 2018)…………………………...11

*Cf., Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1228, n. 7 (D. Utah 1996)……...16

*Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 901 (Okla. 1977)…………………...19

*Davis v. GHS Health Maint. Org., Inc*., 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210…………..18

*Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶ 17,
131 P.3d 127, 133.15……………………………………………………………………….15

*Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1255 (10th Cir. 2010)……………..19

*Goodwin v. Maryland Cas. Co*., 233 F. Supp. 81, 85 (E.D. Okla. 1964)……………17, 18

*Harris v. Progressive Direct Ins. Co.*, 740 F. App'x 900, 908 (10th Cir. 2018)………….19

*Hayes Fam. Tr. v. State Farm Fire & Cas. Co.,* 688 F. App'x 551, 554 (10th Cir. 2017)..20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)………….11

*May v. Mid-Century Ins. Co*., 151 P.3d 132, 140 (Okla. 2006)…………………12, 14, 18

*Merch. v. Safeco Ins. Co. of Am.,* No. CIV-21-391-J, 2022 WL 18143337, at *2 (W.D. Okla. Nov. 15, 2022) (quoting *Hatch v. State Farm Fire & Cas. Co.*, No. CIV-19-471-D, 2020 WL 6163562, at *3 (W.D. Okla. Oct. 21, 2020)…………………………………...11

*Newport v. USAA*, 11 P.3d 190 (Okla. 2000)……………………………………………….20

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993)…………..19, 20

*Panis v. Mission Hills Bank, N.A*., 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)…………………………………………………11

*Peters v. Am. Income Life Ins. Co.*, 77 P.3d 1090, 1099 n. 9 (Okla. Civ. App. 2002)……22

*Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019)…………………19

*Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 344 (10th Cir. 1995)…...20

*Wiley v. Travelers, Inc*., 534 P.2d 1293, 1295 (Okla. 1974)…………………………...12

*Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1164 (N.D. Okla. 2018)……..17

*Yousuf v. Cohlmia*, 718 F.Supp.2d 1279, 1285 (N.D. Okla. 2010) (applying Oklahoma law)…………………………………………………………………………………12

**Statues**

**Rules**

Fed. R. Civ. P. 56……………………………………………………………………………1

Fed. R. Civ. P. 56(a)……………………………………………………………………..10

LCvR 56.1…………………………………………………………………..…………1

**COMES NOW**, Defendant Homesite Indemnity Company ("HIC"), pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, for its *Motion for Summary Judgment* and states as follows:

### Introduction

On January 5, 2025, a leaky gas space heater ignited, causing an explosion and flash fire at Plaintiff's home. Defendant Homesite Indemnity Company ("HIC") was the underwriter of the Policy insuring the home. HIC promptly assigned an adjuster, performed three inspections, and issued over $70,000 of payments within four months. Yet, Plaintiff contends that HIC breached the Policy and did so in bad faith. Plaintiff alleges that HIC failed to pay for damage caused by the explosion to both his real and personal property and owes him additional living expenses. However, the damage to the real property is unrelated to the gas heater explosion based on investigations by HIC's adjuster and a structural engineer. Similarly, Plaintiff's attempts to expand dwelling coverage via the extended replacement cost endorsement also fails, as he never notified HIC of any improvements or alterations to the home, as required by the Policy. Further, Plaintiff admits that the nearly $58,000 in replacement cost value assigned to his damaged personal property was enough, despite his failure to recover the depreciation. Additionally, Plaintiff has not provided any documentation that he incurred additional living expenses beyond what he has already been paid. In sum, HIC paid the claim where it was owed, and Plaintiff's remaining demands are unsupported by the evidence and otherwise barred by the plain language of the Policy. Because HIC satisfied all of its obligations under the policy, Plaintiff's claim for breach of the duty of good faith and fair dealing fails. Accordingly, this Motion should be granted.

1

## Undisputed Material Facts ("UMF")

### The Policy

1. Plaintiff owns the home located at 1612 SW 52nd Street in Oklahoma City (the "Property"), which is covered by HIC Policy No. 32060700 (the "Policy"). *See* Ex. 1 – HIC Policy.

2. The most recent renewal of the Policy occurred in October 2024. *See* Ex. 2 – Renewal at p. 3.

3. The following coverages and their respective limits are applicable to the instant dispute: Dwelling coverage with a $151,000 limit; Other Structures coverage with a $15,100 limit; Personal Property coverage with a $105,700 limit; and Loss of Use coverage with a $30,200 limit. *Id.*

4. Dwelling coverage provides coverage for the "residence premises…, including structures attached to the dwelling[.]" Ex. 1 at p. 19.

5. More specifically, the Policy "insure[s] against risk of direct loss to property described in Coverage A [Dwelling] and B [Other Structures] only if that loss is a physical loss to property." *Id.* at p. 23.

6. The Dwelling coverage is provided at Replacement Cost Value ("RCV"), which is defined as "the cost to replace a structure with materials of like kind and quality without deduction for depreciation." Ex. 1 at p. 5; *see also* Ex. 1 at pp. 26-27.

7. HIC will not pay "more than the actual cash value of the damage until actual repair or replacement is complete." *Id.* at p. 27, subsection (4).

2

8. The Policy also includes an endorsement for "Specified Additional Amount of Insurance for Coverage A – Dwelling – Oklahoma," commonly referred to as "Extended RCV." The Extended RCV endorsement only applies if Plaintiff has

> [a]llowed [HIC] to adjust the Coverage A Limit of Liability and the premium in accordance with: a. The property evaluations we make; and b. Any increases in inflation; **and** 2. Notified [HIC] within 30 days of completion, of any improvements, alterations or additions to the dwelling building which increase the replacement cost of the dwelling by 5% or more; the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling building.

*Id*. at p. 59, at A. (emphasis added).

9. If these conditions are complied with and the loss exceeds the Dwelling coverage limit, then HIC "will provide an additional amount of insurance, up to 25% of the Coverage A Limit of Liability[.]" *Id*. at B.1. Further, in that scenario, HIC

> will pay no more than the smallest of the following amounts for like construction and use on the same premises: (1) The replacement cost of that part of the dwelling building damaged or destroyed; (2) The necessary amount actually spent to repair or replace the damaged or destroyed building; or (3) The limit of liability under this policy that applies to the dwelling building, plus any additional amount provided by this endorsement.

*Id*. at p. 49, 2.b.

10. Plaintiff testified that he had made some improvements or alterations to the Property in the applicable coverage period, specifically installing new siding on the rear elevation of the home. *See* Ex. 3 – Dep. of M. Showalter at pp. 40, 70:23-71:3. However, no evidence exists that he provided notice of completion of any of these improvements to HIC. Further, no evidence exists that the improvements made by Plaintiff increased the replacement cost of the property by five percent (5%) or more.

11. Personal Property coverage is also afforded at RCV. *See* Ex. 1 at p. 46, 2.a.

3

12. Additionally, "[w]hen the replacement cost for the entire loss…is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete." *Id*. at p. 46, 2.b.

13. Plaintiff's personal property loss was far more than $500. *See* Ex. 4 – 2/10/25 Payment Email and Estimate

14. Loss of Use coverage is provided as Additional Living Expenses, meaning HIC will cover "any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment will be for the shortest time required to repair or replace the damage[.]" Ex. 1 at p. 35; *see also* Ex. 5 – Dep. of B. Williams at 220:13-14.

15. Additionally, the Policy provides for "the reasonable cost incurred by you for necessary measures taken solely to protect against further damage." However, this does not increase the limit of liability, nor does it relieve Plaintiff from his duties after loss. *See* Ex. 1 at p. 35.

16. The Policy requires that Plaintiff, as the insured, "[p]rotect the property from further damage. If repairs to the property are required, [Plaintiff] must: (1) [m]ake reasonable and necessary repairs to protect the property; and (2) keep an accurate record of repair expenses." *Id*. at p. 26, 2.d.

17. The Policy does not cover losses caused directly or indirectly by neglect, "meaning neglect of the 'insured' to use all reasonable means to save and preserve property at and after the time of a loss." This exclusion applies "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id*. at p. 25, 1.e.

18. The Policy does not insure for loss caused by weather conditions "if those weather conditions contribute in any way with a cause or event excluded in paragraph 1," such as neglect. *Id*. at p. 25, 2.a.

### The Claim and The Property

19. On January 5, 2025, a built-in gas space heater located in the converted garage bedroom of the Property leaked, causing an explosion and subsequent flash fire. *See* Ex. 6 – Claim Notes at p. 25.

20. On January 8, 2025, Plaintiff notified HIC of the incident. *Id.*; *see also* Ex. 3 at 47:2-6. Adjuster Billie Williams ("Williams") was assigned to the claim and first attempted contact with Plaintiff that same afternoon, but Williams did not reach Plaintiff. *See* Ex. 6 at pp. 24-25.

21. Williams again attempted to contact Plaintiff on January 13, 2025, and January 21, 2025, leaving messages for Plaintiff both times. *Id*. at pp. 23-24.

22. Plaintiff called Williams on January 24, 2025, while still in the hospital, and told Williams that his brother could give Williams access to the Property on January 28 for an inspection. Id. at pp. 22-23.

23. Williams met Plaintiff's brother, John Schafer ("Schafer"), at the Property on January 28. However, Shafer was on his lunch break and could not allow Williams enough time to complete his inspection. Thus, Williams again met Schafer at the Property on February 4, 2025, to complete the interior inspection. *Id*. at pp. 19-20; *see also* Ex. 5 at 157:3-7.

24. Williams made the following observations during his inspections:

5

a.
> Dwelling Roof - is 1 Years Old - Type: Three tab shingles
> • Roof is a one story gable with an gable extensions.  Roof consists of one layer of three tab shingles on a 5/12 pitch.  Roof is 12 years old in claims center, insured's brother advised is was recently replaced and I confirmed during inspection.  Roof is in above average condition.  Explosion pushed decking off of dwelling roof.  Allowed for decking, framing, and roof repairs as warranted.

b.
> Exterior Damages
> • Front elevation wall was pushed out by explosion force.  Front wall and windows will need to be replaced.  Exterior has vinyl siding that was damaged by hail but is now also damaged by this loss. Windows are wood with aluminum storm windows. Windows are damaged.  Front door and storm door were also damaged.  Allowed to frame and sheath wall with existing materials.  Front porch posts were also damaged.

c.
> Personal Property
> • Allowed for personal property that was visible damaged during interior inspection.  Allowed for content manipulation and storage onsite for repairs.  Insured will need to complete additional list as items are moved.

d.
> Interior Damages
> • Living room, bathroom, kitchen, and bedroom were all damaged.  Living room wall is the front elevation wall.  Allowed for drywall and insulation to be removed to allow for structural repairs.  Base, case, and window apron/stool all will need to be replaced.  Electrical in walls will have to be replaced.  Flooring is laminate and allowed for as it was damaged.  Kitchen and bathroom sustained damage to the ceilings.  Roof was blown open over bathroom ceiling.  Kitchen ceiling was damaged by force.  Bedroom is attached garage that has been converted.  Bedroom has light fire damage from explosion.  Drywall is hung and taped on walls.  Ceiling is completed.  Paneling exists on one wall.  Allowed for electrical as warranted.

Ex. 6 at pp. 19-20.

25. Williams determined that the RCV under the Dwelling coverage was $42,322.16, with a net claim at Actual Cash Value ("ACV") of $29,192.27, after applying the $1,000 deductible. The Personal Property claim at RCV was determined to be $1,770.59 with an ACV of $978.91. This resulted in Plaintiff receiving a $30,171.18 ACV payment under the Dwelling and Personal Property coverages on February 10, 2025. *Id*. at p. 16; *see also* Ex. 4.

26. Plaintiff was discharged from the hospital on or about February 5, 2025. Beginning the night of February 4, 2025, and until May 26, 2025, he stayed in a hotel paid for by his ALE benefits. *See* Ex. 7 - ALE Statement.

27. On February 10, Williams spoke with Plaintiff regarding his findings and the ACV payment that Plaintiff would be receiving. He also explained how Plaintiff could

6

receive the additional value under the RCV coverage and the timeline he had for doing so. Williams further explained that if Plaintiff's chosen contractor found additional damage during the repair work, then Plaintiff could submit that information and possibly receive additional money. *See* Ex. 6 at p. 14.

28. Williams also advised Plaintiff of his additional living expenses benefits in this call. Ex. 5 at 222:14-21.

29. On approximately February 18, 2025, Plaintiff retained Ricky Beasley, a public adjuster, to assist him with further negotiations on his claim. *See* Ex. 8 – Public Adjuster Letter of Representation.

30. Beasley inspected the Property and sent documentation of what he believed to be additional damages not included in Williams' initial estimate and payment under his Dwelling coverage. *See* Ex. 9 – Beasley Estimate.

31. Williams reviewed the information from Beasley and scheduled a second inspection on March 24, 2025, to determine the validity of the additional damages alleged by Beasley. *See* Ex. 6 at p. 11.

32. Following that inspection, Williams issued a supplemental payment of $13,394.49 under the Dwelling coverage, resulting in a total RCV of $58,148.26 and total ACV of $42,842.19. *See* Ex. 10 – 4/30/25 Payment Email.

33. However, Williams determined that there was no evidence of explosion-related damage to the kitchen, front right elevation, or bathroom, at least to the extent claimed by Beasley; Thus, not including it in his supplemental estimate and Dwelling coverage payment. Ex. 6 at p. 6.

34. Plaintiff admits that the bathroom had pre-existing water damage. *See* Ex. 3 at 75:19-76:16, 77:13-22.

35. Plaintiff retained Jared Cowdrey, a structural engineer, to further evaluate the home for additional structural damage. Cowdrey inspected the home on May 8, 2025, and issued his report on May 18, 2025. However, Plaintiff never provided this report to Beasley or HIC until it was produced in discovery. Ex. 11 – Engineer Report; Ex. 3 at 130:8-10.

36. Cowdrey attributed some damage to the explosion and subsequent flash fire, while other damage was found to be preexisting or unrelated. Ex. 11 at p. 2.

37. As for fire damage, Cowdrey recommended that "charred framing members will require replacement. Any instances of structural members that do not have charring, can be salvaged with remediation, if desired." *Id*. at p. 12. HIC paid for such replacement in its initial estimate and payment on February 10, 2025. *See* Ex. 4; *see also* Ex. 6 at p. 20.

38. Cowdrey also recommended that the front elevation from the northeast corner to the wall separating the kitchen and living room should be replaced. He did not find that the front elevation from the wall separating the kitchen and living room to the northwest corner of the home to be displaced from the explosion. *See* Ex. 11 at pp. 12-13. HIC paid for the replacement of the front elevation from the northeast corner to the wall separating the living room and kitchen in its initial estimate and payment on February 10, 2025. Ex. 5 at 191:17-22; *see also* Ex. 6 at p. 20 and Ex. 4.

39. He also recommended that the damaged roof rafters and decking should be replaced. Ex. 11 at p. 13. HIC paid for this damage in its initial estimate and payment on February 10, 2025. *See* Ex. 6 at p. 19 and Ex. 4.

40. Cowdrey also found unrelated structural damage, including "several areas of sloping floors and diagonal wall cracks." He determined that these are "likely related to the observed foundation issues such as improper or damaged piers." Ex. 11 at p. 12. Despite this, HIC had already paid for the drywall throughout the home to be replaced in its initial estimate and payment on February 10, 2025. *See* Ex. 4.

41. Cowdrey determined that the damage to the foundation was not related to the explosive force or flash fire. Ex. 11 at p. 12.

42. Since June 2025, Plaintiff has been living in a camper he moved into the Property's backyard. *See* Ex. 3 at 66:15-67:3.

43. Beasley also provided information on damaged personal property to HIC. *See* Ex. 12 – Personal Property Inventory.

44. Upon receipt of the detailed personal property inventory, Williams determined that Plaintiff's personal property claim was worth $57,643.61 RCV or $29,141.82 ACV. Williams issued the supplemental payment of $28,162.91 ACV on May 7, 2025. *See* Ex. 13 – 5/7/25 Payment Email with Attachments.

45. Plaintiff admits that the approximately $57,000 RCV allotted under his Personal Property coverage is enough, and possibly more than enough, to replace the personal property damaged in this incident. *See* Ex. 3 at 124:8-16.

9

46. Plaintiff has not submitted any information to HIC to recover the depreciation for his personal property loss. *Id*. at 116:1-17.

47. Plaintiff has replaced the tarp on the roof at least three times since the date of loss. *Id*. at 64:19-22.

48. Plaintiff's general contractor, Lance Pound, admits that the Property has suffered subsequent water damage due to the failure of the tarps. *See* Ex. 14 – Dep. of L. Pound at 203:8-206:14, 207:23-208:2.

49. Pound states that, at best, these tarps last for six weeks. *Id*. at 182:16-18.

50. The responding firefighters placed the board over the front windows. *See* Ex. 15 – Fire Department Report.

51. Other than these temporary patches, Plaintiff has not done anything to restore the home to its pre-loss condition. Ex. 3 at 132:2-6.

52. Plaintiff also never provided any information to support an increase in his living expenses to receive additional benefits under his ALE coverage. Ex. 5 at 223:10-15.

<u>**Argument and Authorities**</u>

**I.      The Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). HIC, as the movant, bears the burden to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If HIC carries this burden, then the burden shifts to Plaintiff to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. Plaintiff "must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Only then can the Court deny the movant's *Motion*. For reasons stated herein, no genuine issue of material fact exists as to any of Plaintiff's causes of action alleged in his Petition.

## II.    HIC provided all benefits owed to Plaintiff for this loss, thus it did not breach the Policy.

The elements of breach of contract are "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach." *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018); *see also Merch. v. Safeco Ins. Co. of Am.,* No. CIV-21-391-J, 2022 WL 18143337, at *2 (W.D. Okla. Nov. 15, 2022) (quoting *Hatch v. State Farm Fire & Cas. Co.*, No. CIV-19-471-D, 2020 WL 6163562, at *3 (W.D. Okla. Oct. 21, 2020)) ("To prove breach of contract related to an insurance claim, Plaintiffs must show 'a contract existed; the contract required [the insurance] coverage benefits to be paid; and [Defendant] breached the contract, and caused damages, by failing to make the payment.'").

Under Oklahoma law, the interpretation of insurance contracts constitutes an issue of law for the Court to resolve. *See Yousuf v. Cohlmia*, 718 F.Supp.2d 1279, 1285 (N.D. Okla. 2010) (applying Oklahoma law); *see also May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006). The terms of the insurance policy are to be given their plain and ordinary meaning. *Id.* Where, as here, the language of the Policy "is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties." *Id.* More specifically, "[t]he construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Wiley v. Travelers, Inc.*, 534 P.2d 1293, 1295 (Okla. 1974).  The first element is not in dispute: There is a contract for insurance benefits between Plaintiff and HIC. *See* UMF No. 1. Plaintiff alleges that both Defendants breached the Policy by failing to pay enough benefits to repair the Property, failing to pay enough benefits to replace the lost personal property, and failure to pay the additional living expenses of Plaintiff. *See* Doc. 1-2. HIC did not breach the Policy as to any of these three coverages.

a. <u>HIC did not breach the contract as to the benefits provided under the Dwelling coverage because HIC paid all benefits owed to Plaintiff.</u>

Plaintiff contends that HIC generally failed to pay for damage caused by the explosion. Dwelling coverage provides coverage for damage to the "residence premises," in this case, Plaintiff's home at a limit of $151,000. *See* UMFs Nos. 3-5. More specifically,

12

this coverage is provided at Replacement Cost Value ("RCV"), which is "the cost to replace a structure with materials of like kind and quality without deduction for depreciation." *See* UMF No. 6. After two inspections, Williams determined that the damage from the explosion and subsequent flash fire would cost $42,322.16 RCV/$29,192.27 ACV, after application of Plaintiff's $1,000 deductible. *See* UMF No. 25. Plaintiff received the ACV amount of $29,192.27 in his initial payment. *Id*. Following an additional inspection, completed after receiving additional information from Plaintiff's public adjuster, Williams increased the RCV of the home to $58,148.26 and the ACV to $42,842.19. This reinspection resulted in an additional payment of $13,394.49 to Plaintiff. *See* UMF No. 32.

Williams determined that the damage to the bathroom, kitchen, and front right elevation between the kitchen and converted garage bedroom were not caused by the explosion and subsequent flash fire. *See* UMF No. 33. Plaintiff's own engineer, Cowdrey, determined that much of the structural damage was not caused by the explosion. *See* UMF No. 41. Cowdrey's findings are consistent with those of Williams. *See* UMFs Nos. 36-41. Moreover, Plaintiff has provided no evidence that damage not paid for by HIC are otherwise covered under the Policy. Accordingly, Plaintiff's breach of contract claim as to the Dwelling coverage should be denied.

       b.  The Extended RCV Endorsement does not apply because Plaintiff failed to put HIC on notice of any improvements or alterations to the Dwelling.

Plaintiff contends that the Extended RCV endorsement on the Policy applies and he is entitled to an additional twenty-five percent (25%) of his Dwelling coverage limit. However, the plain language and the facts of this lawsuit preclude application of the

Extended RCV endorsement. The endorsement requires Plaintiff notify HIC "within 30 days of completion, of any improvements, alterations or additions to the dwelling which increase the replacement cost of the dwelling by 5% or more[.]" *See* UMF No. 9. Plaintiff testified that he has made several "improvements, alterations or additions to the dwelling" during his ownership and even during the applicable coverage period. *See* UMF No. 10. However, Plaintiff did not notify HIC of these "improvements, alterations or additions" or that these increased the replacement cost of the dwelling by at least five percent (5%). Accordingly, the Extended RCV endorsement does not apply. Even if Plaintiff could produce such evidence of notification and value, this endorsement only applies if Plaintiff "elect[s] to repair or replace the damaged or destroyed dwelling building." UMF No. 9, *supra*. Plaintiff has made no attempt to repair the dwelling, despite receiving more than $40,000 and having more than $15,000 owed upon proof of repair. *See* UMFs Nos. 25, 32. Thus, Plaintiff would not be owed any money beyond the Dwelling coverage limit unless and until he repairs his home, and HIC did not breach the Policy by failing to pay such amounts.

        c. <u>Plaintiff is not entitled to indemnity for subsequent water damage due to the Policy's exclusions for neglect and weather.</u>

HIC also anticipates Plaintiff will argue that HIC should indemnify him for water damage that occurred because of failing to properly tarp damaged areas following the explosion. Such water damage is excluded under the plain language of the Policy. *See May*, 151 P.3d at 140. Per the clear and unambiguous terms of the Policy, there is no coverage for losses "caused directly or indirectly by any of the following. Such loss is excluded

14

regardless of any other cause or event contributing concurrently or in any sequence to the loss." *See* UMF No. 19 (quoting Exclusion 1.e.). Oklahoma law refers to this as a "lead-in clause." *See Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶ 17, 131 P.3d 127, 133. Such clauses are not "masked by technical or obscure language or hidden in the policy." Thus, this clause must be read according to its plain meaning. *Id*. at ¶ 21, 134. The "neglect" exclusion following the lead-in clause is defined as "neglect of the 'insured' to use all reasonable means to save and preserve the property at and after the time of a loss." *See* UMF No. 17. Read together with the lead-in clause, this exclusion precludes direct or indirect loss caused by the "neglect of [Plaintiff] to use all reasonable means to save and preserve the property at and after the time of a loss" "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id*. The Policy also excludes losses to the home caused by weather conditions, when "those weather conditions contribute in any way with a cause or event" like neglect. *See* UMF No. 18.

Pound, Plaintiff's general contractor, testified that the tarps used on Plaintiff's roof last for six weeks at best before they will fail and allow for water intrusion. Yet, Plaintiff has only changed them approximately three times in more than one year. Further, despite receiving more than $70,000 to repair his home, Plaintiff has not installed a new roof to permanently prevent water intrusion.  Indeed, the water damage was caused by rain and snow entering the home from the roof when the tarps failed. *See* UMFs Nos. 47-49, 51.The Policy expressly requires that Plaintiff protect the property from further damage through reasonable and necessary repairs. *See* UMF No. 18. He failed to do so, resulting in water

15

damage to the interior of the home.[1] Thus, there is no coverage for the water damage to Plaintiff's home which occurred after the explosion, and HIC's Motion should be granted.

> d.  <u>Plaintiff does not dispute the Replacement Cost Value attributable to his lost personal property; Thus, HIC did not breach the Policy by failing to pay additional amounts for Personal Property.</u>

Plaintiff also alleges that Policy was breached as to the Personal Property coverage. The Policy provides for $105,700 in Personal Property coverage. *See* UMF No. 3, *supra*. Adjuster Williams determined the value of Plaintiff's personal property to be $1,770.59 RCV/$978.91 ACV in his initial estimate and paid Plaintiff $978.91 ACV for his personal property on February 10, 2025. *See* UMF No. 25. Plaintiff and his public adjusting firm submitted dozens of photographs, receipts, and a spreadsheet detailing the personal property that had been damaged or lost in the incident. *See* UMF No. 43. HIC, after verifying this information, issued another payment of $28,162.91 ACV to Plaintiff for his damaged personal property. *See* UMF No. 44. The total additional recoverable appreciation available to Plaintiff, had he provided documentation that he had replaced these damaged items as required under the Policy, is $28,501.79. *Id*. Plaintiff admits that he did not submit any documents to HIC, either directly or via Beasley, to recover the depreciation. *See* UMF No. 46. Plaintiff further admits that the replacement cost value assigned to his personal property was enough. *See* UMF No. 45. Accordingly, HIC did not breach the contract with respect to the Personal Property coverage, and this Motion should be granted.

---

[1] *Cf., Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1228, n. 7 (D. Utah 1996) (finding an insured complied with this duty to protect their property when they hired experts and made repairs).

16

e. <u>HIC did not breach the Policy by failing to pay Additional Living Expense benefits because Plaintiff did not provide evidence of incurred increased living expenses, nor does this coverage provide for Plaintiff's medical expenses.</u>

Plaintiff also alleges that HIC did not fully compensate him pursuant to the Additional Living Expenses ("ALE") coverage of the Policy. This, Plaintiff argues, is because Plaintiff was not provided with ALE benefits during his hospital stay during treatment for the injuries sustained in the incident. ALE coverage is a "cost-incurred" coverage, meaning Plaintiff must actually incur an increase in his living expenses and submit proof of it to receive the benefit. *See* UMF No. 14; *see also* 12A Couch on Ins. § 178:17. "Incur" is defined as "to suffer or bring on oneself (a liability or expense)." INCUR, Black's Law Dictionary (12th ed. 2024). Thus, Plaintiff would be owed indemnity for any increased living expenses once he suffers that expense. Plaintiff never submitted any evidence of increased living expenses, such as food or laundry. *See*, *e.g., Goodwin v. Maryland Cas. Co.*, 233 F. Supp. 81, 85 (E.D. Okla. 1964) (discussing food, laundry, the cost of water, and rent as being living expenses which may be covered by this type of insurance coverage).

In this claim, Williams advised Plaintiff that he had ALE coverage, despite not being required to do so. *See* UMF No. 28; *see Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1164 (N.D. Okla. 2018). Williams also worked with contractor ALE Solutions to get Plaintiff a hotel room until his home could be repaired. *See* UMF No. 26. Plaintiff moved out of the hotel room in May 2025 and began living in a camper, but he did not provide that information to HIC such that he might continue receiving ALE benefits. *See* UMF No.

17

42. Further, a plain reading of this language confirms that Plaintiff's medical bills are not covered by the Additional Living Expense benefits in the Policy. *See May*, 151 P.3d at 140. These benefits cover "any necessary increase in **living expenses** incurred by you so that your household can maintain its normal standard of living." UMF No. 14. A reasonable construction of this coverage lends itself to providing help with the increases in costs such as gas, food, and rent. *See*, *e.g.*, *Goodwin* at 83. Accordingly, HIC did not breach the ALE provisions of the Policy, and this Motion should be granted.

### III.    A legitimate dispute exists as to Plaintiff's claim, extinguishing his bad faith cause of action.

If the Court determines that HIC did not breach the insurance contract, then there can be no bad faith. *Davis v. GHS Health Maint. Org., Inc.*, 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210 (finding "a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract."). However, if the Court determines that a fact question exists as to a potential breach and denies HIC's Motion regarding the same, then the Court must determine whether HIC breached the duty of good faith and fair dealing in the handling of Plaintiff's insurance claim. Here, Plaintiff claims that HIC acted in bad faith in "its refusal to properly remediate Plaintiff's home following the covered loss[2], and Defendants' unreasonable delay in the handling of Plaintiff's claim." *See* Doc. 1-2 at p. 2. As explained below, HIC did not act in bad faith in the payment or handling of Plaintiff's claim.

---

[2] From the course of this litigation, HIC understands this to mean HIC's alleged underpayment of Plaintiff's claim.

a.   Oklahoma bad faith law generally:

Under Oklahoma law, an insurer has a duty to act in good faith and to deal fairly with its insured. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 901 (Okla. 1977). A violation of this duty gives rise to a cause of action in tort. *Id.*

To establish a prima facie case of bad faith under Oklahoma law, the insured must prove the following elements: "1) coverage under the insurance policy and that the insurer was required to take reasonable actions; 2) the actions of the insurer were unreasonable under the circumstances; 3) the insurer failed to deal fairly and act in good faith toward the insured in its handling of the claim; and 4) breach or violation of the duty of good faith and fair dealing was the direct cause of any damages that the insured sustained." *Harris v. Progressive Direct Ins. Co.*, 740 F. App'x 900, 908 (10th Cir. 2018) (unpublished). "The core of a bad-faith claim is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1255 (10th Cir. 2010) (internal quotation marks omitted).

To succeed on a bad faith claim, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). This determination is made "in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligation." *Id.* at 1439 (internal quotation marks omitted). But "[u]ntil the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* at 1437.

In determining whether to submit a bad faith claim to the jury, courts generally employ a two-step analysis. In the first step, the court considers "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim. If there is no legitimate dispute between the parties, the court may infer that the insurer denied payment in bad faith." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019). If there is a legitimate dispute between the parties, "then as a matter of law, no reasonable inference of bad faith arises." *Id.* (brackets, ellipses, and internal quotation marks omitted). The insured must then "produce additional evidence of bad faith in order to send the issue to the jury."

19

*Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 344 (10th Cir. 1995).

*Bowers v. CSAA Gen. Ins. Co.*, No. CIV-23-419-J, 2024 WL 1699560, at *5–6 (W.D. Okla. Apr. 8, 2024), *reconsideration denied*, No. CIV-23-419-J, 2024 WL 4004997 (W.D. Okla. July 11, 2024).

        b.  <u>A legitimate dispute exists as to the value of the loss and the scope of repairs necessary.</u>

Plaintiff alleges that HIC acted in bad faith in its determination that this loss was worth less than $60,000. As discussed in Section II(b), *supra*, Plaintiff is not entitled to the Extended RCV endorsement for this claim, capping his available Policy benefits for Dwelling at $151,000.00. HIC, via Williams, determined that the Dwelling benefits owed, at replacement cost, were $58,148.26 following his inspections. *See* UMF No. 32; *see Hayes Fam. Tr. v. State Farm Fire & Cas. Co.,* 688 F. App'x 551, 554 (10th Cir. 2017)[3] (applying Oklahoma law) (finding, in part, carrier did not act in bad faith where it conducted multiple inspections and issued multiple estimates). An insurer's good or bad faith must be determined by the facts it knew or should have known at the time it denied an insured's claim. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993) (applying Oklahoma law); *see also Newport v. USAA*, 11 P.3d 190 (Okla. 2000). Here, HIC knew the Property sustained an explosion and flash fire. *See* UMF No. 19. HIC also knew the Property had unrelated damage, likely from water. *See* UMF No. 33. At the time it adjusted the loss, HIC did not have the engineer's report or the estimate from Plaintiff's general contractor expert, Pound, both of which have been produced in this litigation. To

---

[3] Attached hereto as Exhibit 16.

the extent that Plaintiff argues HIC should have employed a structural engineer like Cowdrey, then Williams's conviction about unrelated damages would have likely been confirmed. *See* UMFs Nos. 36-41. Further, Pound admits that at least some of the damage is due to the failure of the temporary repairs. *See* UMF No. 48. Accordingly, a legitimate dispute exists as to the Dwelling claim.

As for the personal property claim, HIC never denied coverage and Plaintiff admits that the replacement cost value determined by HIC is satisfactory to replace the damaged personal property. *See* UMF No. 45. Further, as soon as HIC received Plaintiff's inventory through his public adjuster, this claim was paid. *See* UMF No. 44. Thus, no bad faith exists as to the personal property claim.

Plaintiff also alleges that HIC acted in bad faith by failing to tender ALE benefits for the time that he was in the hospital. As discussed in Section II(c), *supra*, ALE benefits are for **increased** living expenses which are **incurred** by a policyholder. HIC, through ALE Solutions, paid for Plaintiff to stay in a hotel. *See* UMF No. 26. Plaintiff provided no evidence of additional incurred costs; Thus, HIC had no reason to issue payment beyond the hotel room.

Because a legitimate dispute exists, Plaintiff's bad faith claim must fail.

## IV.    Plaintiff's claim for punitive damages fails because HIC did not commit bad faith.

Under Oklahoma statute, a jury may award punitive damages "[w]here the jury finds by clear and convincing evidence that ... [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured[.]" 23 O.S. § 9.1(B)(2). Thus, a punitive

21

damages claim is "dependent upon bad faith for its basis." *Peters v. Am. Income Life Ins. Co.*, 77 P.3d 1090, 1099 n. 9 (Okla. Civ. App. 2002). Accordingly, because HIC did not act in bad faith in the handling of Plaintiff's claim, Plaintiff's claim for punitive damages fails as a matter of law.

## Conclusion

Plaintiff's insurance claim has been satisfied. HIC performed a prompt and fair adjustment of this claim, applying all necessary coverages to this loss. HIC upheld its obligation of good faith and fair dealing by working with Plaintiff and his representatives to thoroughly evaluate this loss and paying all sums owed within four months of the loss. Accordingly, this Motion should be granted.

Respectfully submitted,

/s/ *Madison A. Botizan*
Robert Todd Goolsby, OBA #12676
Madison A. Botizan, OBA #34615
Valerie R. Smith, OBA #30259
GOOLSBY, PROCTOR, NELSON & LEE
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102-6006
T: 405-524-2400 | F: 405-525-6004
tgoolsby@gpnllaw.com
mbotizan@gpnllaw.com
vsmith@gpnllaw.com
**Counsel for Defendant**

22

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I electronically transmitted the foregoing documents to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gerard F. Pignato, OBA #11473
Matthew C. Kane, OBA #19502
RYAN WHALEY, PLLC
400 N. Walnut Ave.
Oklahoma City, OK 73104
jerry@ryanwhaley.com
mkane@ryanwhaley.com

and

Susan Kane, OBA #19455
KANE ADVOCATES
14 N.E. 13th St.
Oklahoma City, OK 73104
skane@kaneadvocates.com
***Attorneys for Plaintiffs***

/s/ *Madison A. Botizan*

23